# EXHIBIT A

Filed
D.C. Superior Court
12/27/2021 15:29PM
Clerk of the Court

Superior Court of the District of Columbia
CIVIL DIVISION – Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. 2021 CA 004775 B

# COMPLAINT

Jurisdiction of this Court is founded on D.C. Code § 11-921.

| PLAINTIFF | | DEFENDANT |
|---|---|---|
| Xunxian Liu | vs | Georgetown University |
| Address (No Post Office Boxes): 614 Rollins Ave | | Address (No Post Office Boxes): 37th and O Street, 204 Healy Hall |
| City: Rockville State: MD Zip Code: 20852 | | City: Washington State: DC Zip Code: 20057 |
| Telephone Number: 301-633-6681 | | Telephone Number: 202-687-4134 |
| *Email Address (optional)*: xunxianl@yahoo.com | | *Email Address (optional)*: |

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

Employment Discrimination

Please see details in attached narrative statements

2. What relief are you requesting from the Court? Include any request for money damages.

Please see narrative statements

3. State any other information, of which the Court should be aware:

Please see narrative statements

**SIGNATURE**

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

**SIGNATURE**

12/8/2021

**DATE**

Subscribed and sworn to before me this ____________ day of ____________ 20____.

(Notary Public/Deputy Clerk)

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

Xunxian Liu， Plaintiff

V

Case#: TBD
Request to assign the case to Judge: HIRAM E. PUIG-LUGO

Georgetown University

Defendant

..................................................................................................................

614 Rollins Ave
Rockville, MD 20852

December 8, 2020

Honorable Judge HIRAM E PUIG-LUGO
Superior Court of the DC
500 Indiana Ave NW
Washington DC 20001

December 8, 2021

**Initial Claims of Employment Discrimination (code: CAB Civil II (B))**

Dear Judge PUIG-LUGO:

I have received Your Honor's Order to deny my motion (file 26, 2020 CA 002749B) and offer me extension to file initial claims of my complaints of damages in my civil rights, which have partly been claimed in cases 14741 and 14771 in Office of Human Rights, whereas those cases have been dismissed and/or withdrawn by me (attachments of file 26, 2020 CA 002749B). My complaints in OHR involved DC laws in which OHR has no jurisdiction; moreover, I did not indicate clearly that my cases had fallen into what categories of Title V II of the civil right Act of 1964 and the Age Discrimination in Employment Act of 1967, and what my civil rights are violated by Georgetown University employees. Since this Court protects all-round civil rights of

anyone who works in DC, based on the US Constitution, federal laws and DC laws, I will state my complaint thoroughly as follows:

**Background**

*Information of persons who are involved in my-alleged discrimination incidents:*

1. Xunxian Liu or I, PhD, age: 62-64 during the time working in GU; national origin: People's Republic of China or Chinese, official language and my first language are not English, I came to the US at age 36 to pursue a PhD degree of biomedical sciences and five years later, I acquired it. Because diplomatic relationship between the two countries was established in 1979 at my age 25, when I was perusing a BS degree of biology in a Chinese University; after the graduation in 1982, I was teaching biology in a middle school. In 1985 and 1987, I was studying molecular genetics in Shanghai Institute of Biochemistry, Chinese Academy of Science and acquired an MS degree. I began to study English in China, which is not a good environment to learn English as there was little communication with native English speakers; at my age 26, which passes the best ages to learn English; hence, I took ten years to pass TOEFL and acquired a US school admission/fanatical support in 1990. Therefore, my poor English is national origin/age-related or born-linked, as I could not make any efforts in change of my born place/time and the US-China diplomatic relationship. I was hired as Research Specialist by Dr. Alexander Kroemer in 1/2017 and this position was temporary, paid by Kroemer start funding and later, his R21 funding; in April 2019, Dr. Kroemer offered me Research Associate which is said a long-term position, but there was no increased benefit. My main research in the lab is mice project, supported by R21.

2. Katrina Loh, MD, age: not to 40; national origin: Malaysia. Although Official language is not English in Malaysia, there was no diplomatic problem with the US since her born, so that her national origin has advantage to learn English, compared with mine. Also, I heard that she might have come to the US at age 3, which may be counted as the US national origin at least in speaking English. Her salary was paid by Children's National Hospital and Dr. Kroemer recruited her as Medical Fellow in July, 2018, assigning her to the mouse project, in which and when I had already acquired interesting results . GU might not pay her.

3. Jiman Kang, PhD, age: not to 40; national origin: Korea, which has no diplomatic problem with the US since his born; also, there are many more English speakers in Korea than in China, so that Korea is a better place to learn English than China. I estimate that he came to the US at age 20s. He was hired as Research Assistant by Dr. Kroemer in April 2017 and paid by Kroemer's R1 funding, which supports human research.

4. Alexander Kroemer, MD/PhD, age: middle 40; national origin: Germany; Assistant Professor of GU; He leads the lab as he acquires funding that pays lab members' salary and lab's expenses, from GU and National Institutes of Health, so that he is a formal employee of GU which has liability for Kroemer's wrongdoings as the offenses happened/happen within his official activities.

*I caused research that produces disputes due to Kroemer/GU's wrongdoings*

5. In the end of 2017 and the beginning of 2018, Dr. Kroemer invited us to contribute ideas to his lab research projects.

6. During that time period, I was raising mice in three cohorts of the mice fed with different diet and/or water: a. mice fed with normal diet/normal water; b. mice fed with high fat diet/normal water; c. mice fed with the high fat diet/water with a drug which is an obesity-resistant drug. In NIH, I have found PLIN2, a lipid-associated protein that plays roles in maintain cell balance/life, which is broken by lipid or fat. We published the study and summarized the results in a review paper as follows:

**Liu X**, Lu X, Song K, Blackman MR. Natural functions of PLIN2 mediating Wnt/LiCl- signaling and GSK3/GSK3 substrates-related effects are modulated by lipid. 2016 Feb Mol Cell Biol. 36;421-37 (original study)

**Liu X**, Yao Z1. Chronic over-nutrition and dysregulation of GSK3 in diseases. Nutr Metab (Lond). 2016 Aug 4; 13:49. (review paper)

In the review paper, we have drawn a cartoon (Attachment 1) to display relationships of PLIN2, CLD (cellular lipid/fat droplets) and cell signaling.

7. As the results are from in vitro: cells were treated without or with fatty acid, I proposed that we might try to perform in vivo study by sending an email to Dr. Kroemer*: mice were fed without or with high fat diet, and Dr. Krolemer agreed to study that direction with these three mice cohorts. Thus, the ideas to investigate PLIN2/fat-associated diseases or molecular mechanisms of obesity-associated diseases are mine, or I caused the research.

8. Besides measuring weights of the three cohorts of mice every week, I also independently performed diabetic tests of more than 60 mice. We sacrificed mice, and I measured liver weights and collected tissues (livers, spleens and blood) after some mice with ischemia reperfusion injury (short of blood in liver) and this surgery was

*: If Defendant disagrees with the point, I will request to retrieve the email from GU email database, probably during January of 2018, which is only one piece of evidence that may need go to discovery

performed by a Resident Doctor with Kroemer. Although Loh performed the surgery/sacrifice of mice later, the presentations (please see below) did not use her sacrificed mice samples, as I had already performed experiments (immune blots) and asked GU facility to perform immunohistochemistry, using my-selected commercial antibodies from hundreds with my expertise, before she came to this lab.

**Discrimination incidents**

*GU deprived my rights to present my results (not claimed in this aspect) and to be the first author in my-caused study*

9. In later June of 2019, I found that my-generated data (sentence 8: mice/livers weights; diabetic tests; immune blots and immunohistochemistry were presented in the June of 2019 transplant conference by Loh as a poster (Attachment 2, the published abstract) and she also presented the poster in the Children Hospital in April 2019 (Attachment 3, boxed figures are my results). In both abstract titles, PLIN2 appears; moreover, the last figure (figure 8 of the poster) reveals molecular mechanism that is the key of the meeting abstract; hence, my data and my ideas (sentence 7) are major contributions to the presentation in the conference. Kroemer never consulted me whether let Loh present the data, though my civil rights are not negotiable. My right to present my-produced intellectual property is an unlisted civil right, protected by the 9th Amendment of the US Constitution, I never claimed about this previously. Although I claimed that Kroemer had suppressed me fully participate in intellectual life in DC (DC code: § 2-1402.01) before, there is no judgment on this point that was classified to discrimination,

waiting for OHR decision. Now, OHR dismisses the cases and both claims of mine are valid for GU liability. Both laws are universal civil rights.

10. As I have never claimed damage of the Constitutional right of mine (my right to present my data) before, there is concern of the statute limitations. In DC, the statute of limitations for claiming civil right damages is three-years. This incident happened in 2019, within the statute of limitations.

11. In addition, Dr. Kroemer asking Dr. Loh, but not me to present my data is national origin and age discrimination, as he thinks my spoken English was poor; yes, he is right. As I stated in sentences 1-3, my poor English is associated with national origin and age, which are born with features and cannot be discriminated. My right to present my data is a civil right, which cannot be deprived, no matter how poor my English is. I had worked in many labs before the GU lab in the US, and the former supervisors of mine always let me present my results, which is training opportunity, and my English was even poorer there than that in GU which allows one to present others' results, doing strangely different from other research institutes in the US. Additional evidence of the discrimination is that Dr. Kroemer let Dr. Kang present his results, which are not from Kang's ideas, in the same meeting (Attachment 4), but did not let me present my outcomes from my ideas. However, Dr. Kroemer called Dr. Kang whether Dr. Kang could let Dr. Loh be the first author in his abstract as Dr. Kroemer wanted to foster Dr. Loh, saying this is important for her and suggesting that she is young and will have bright future; Dr. Kang declined the idea, saying he felt uncomfortable. I know that as I sat aside my desk, listening to the phone call. Dr. Kroemer never asked me for the authorship listing in my-caused study, suggesting that I was old and the first authorship

was useless for me, which is age discrimination; furthermore, my privilege of the employment to be the first author in my-caused study is also protected by ADEA of 1967. I filed complaint that I should have been the first author in the presentations to OHR, and GU investigated the incidents only to Loh, but not Kroemer who determined the authorship sequence of the presentation by trespass of my right to be the first author in my-caused research. GU SubCommittee did not care of the trespass, but suggesting Loh's presenting my-caused study is reasonable (Attachment 5). Actually, this is violation of my right to be the first author in my-caused research. Of my 29 formal publications, I am the first author in 14 of 29. In the 14 publications, I caused the studies and/or played major roles in those studies. Without my ideas, there would have been no such PLIN2 presentations (Attachments 2 and 3). GU violating my right to be the first author in my-caused study is infringement of my Constitutional right, protected by Amendment Nine of the US Constitution. Additionally, Kroemer/GU allowing Loh to present my results is national origin discrimination, as the presentation of my data is training opportunity which cannot be deprived due to national origin (SEC. 2000e-2. [Section 703], (d), Title VII of the Civil right Act of 1964); again, presenting my data in a meeting is one of my privileges of the employment (ADEA of 1967). I have successfully presented (talk or poster) my data in international conferences, held in the US or Canada for at least over five times.

12. Kroemer/GU are recklessly indifferent of my protected rights including my right to present my data, my right to be the first author in my-caused research, my equal opportunity to participate fully in intellectual life, my protected training opportunity and

my protected privilege of the employment, contravening 42 USC § 1981a that defines punitive damages compensations.

*GU terminated my position because of my complaint; namely, retaliation (14741 of OHR)*

13. As I found Loh presented my results without my consent, I sent an email to Dr. Kroemer, saying I felt very uncomfortable on 6/6/2019 (Attachment 6). Dr. Kroemer did not address my complaint, but asked me to finish ferroptosis tests. Once I completed the study, Ms. Anju Duttargi (Dr. Kroemer's lab manager) and Ms. Megan Hausler (Dr. Kroemer's secretary) gave me a termination letter on 6/27/2019 (Attachment 7); obviously, Dr. Kroemer was behind the termination letter and perpetrated reprisal of my complaint email of 6/6/2019.

14. This discharge violates DC retaliation law (DC code: § 2-1402.61) as the causal linkage is within 90 days, required by the law. Although the letter lists so called poor performance of mine, the law requires substantial evidence of poor performance that is to be qualified as the other reason for termination. In the letter, Ms. Duttargi lists three pieces of incidents that allege my poor performance. One is that I mistook a patient name with an assay report, which was corrected immediately and did not engender any damage, in my hundreds of this kind of assay report. The second one is that I used wrong reagents in a new experiment, which occurred just once, and I ordered correct reagents but did not get chance to try as my position was terminated. The third one is my taking a nap on my desk in just a few minutes and Ms. Duttargi taught me that I could not do that. That happened before my complaint email of 6/6/2019 (Attachment 6), and just once, which is inadequately for firing. Even if this construes enough reason for

discharge, they should have fired me before 6/6/2019, not after over a month later. The listed poor performance of mine was denied as the other reason for the firing by the DC Unemployment Office, saying the reason for me to be fired is because I sent a complaint email (Attachment 6) for a Doctor presenting my results (Attachment 8), acknowledging my retaliation claim.

15. The termination of my job is also discrimination in national origin and age, because Dr. Kang complained as I did: uncomfortable for Loh to be the first author in his study, he is still hired, whereas I have been fired.

16. This termination also suppressed my Constitutional right for complaining, secured by Amendment One of the US Constitution; moreover, the motive listing my limited poor performance is malicious and the revenge against my complaint is recklessly indifferent of my protected right including my Constitutional right and rights for equal employment , breaking 42 USC § 1981a.

*GU revenges my complaint by trespass of my data (14771 of OHR)*

17. On 11/24/2020, I sent email to Dr. Kroemer, Mr. Michael Smith ((Director, Affirmative Action, Office of Institutional Diversity, Equity & Affirmative Action-IDEAA, Georgetown University) and Ms. Mary Schmiedel (Senior Director, Office of Research Oversight, Main Campus & Medical Center Conflict of Interest Officer Research Integrity Officer, Georgetown University) to request my-generated ferroptosis data (sentence 13) for a possible publication with GU authorship (Attachment 9), but they never gave me any response, which is trespass of my data, defined by Your Honor's Order of 10/15/2020, page 4, paragraph 2 in the case: 2020 CA 02749B.

18. They also violate my right to use my-generated data, protected by the 9th Amendment of the US Constitution; again, this is retaliation (DC code: § 2-1402.61) as I filed complaint in OHR (14741) and suppression of my equal opportunity to join intellectual life fully in DC (DC code: § 2-1402.01) and my right to file complaint, secured by the first Amendment of the US Constitution.

19. They are recklessly indifferent of my protected Constitutional rights, violating 42 USC **§** 1981a.

**Remedy**

20. Since GU in all the three incidents contravened/violate 42 USC **§** 1981a (sentences 12, 16 and 19), and the number of GU's employees is more than 500, the remedy including punitive damages compensations is $300000 for each incident, and total of the remedy is $900000.

**Request Jury**

21. I propose Jury to determine if my civil rights are damaged in those three incidents, pursuant to Amendment Seven of the US Constitution as the disputed money is greater $75000; also, a Jury's decision is final. In the US, civil disputes with Jury hearing/decision which are administrated by a Judge will fully and fairly be resolved. I will pay Jury expenses if the Jury does not support any of my allegations. Respectfully, Xunxian Liu (electronic signature) Claimant, Pro se

I certify that I will have Georgetown University be served as the online address: Office of the President, 204 Healy Hall, 37th & "O" Streets, NW, Washington, DC 20057-1789, if the case is established in the Court and the Summons (attached for stamp) is issued. Xunxian Liu (electronic signature)

# Attachment 1



6/28/2019 Sequestration of PLIN2 Regulates High-Fat Diet Induced Metabolic Syndrome and Nonalcoholic Fatty Liver Disease in a Mouse Model of Ischemia Reperfusion Injury - ATC Abstracts

Attachment 2

MEETING ABSTRACTS

Home Meetings Archive Keyword Index Resources Advanced Search Search this website Search

# Sequestration of PLIN2 Regulates High-Fat Diet Induced Metabolic Syndrome and Nonalcoholic Fatty Liver Disease in a Mouse Model of Ischemia Reperfusion Injury

*K. Loh[1], X. Liu[1], L. Belyayev[1], C. Albanese[2], W. Cui[1], T. M. Fishbein[1], K. M. Khan[1], A. Kroemer[1]*

[1]Transplant, MedStar Georgetown Transplant Institute, Washington, DC, [2]Oncology, Georgetown University, Washington, DC

**Meeting:** 2019 American Transplant Congress

**Abstract number:** B29

**Keywords:** Donors, marginal, Liver transplantation, Mice, Warm ischemia

Session Information

**Date:** Sunday, June 2, 2019

**Session Name:** Poster Session B: Ischemia Reperfusion & Organ Rehabilitation

**Session Time:** 6:00pm-7:00pm

└ **Presentation Time:** 6:00pm-7:00pm

**Location:** Hall C & D

https://atcmeetingabstracts.com/abstract/sequestration-of-plin2-regulates-high-fat-diet-induced-metabolic-syndrome-and-nonalcoholic-fatty-liver-disease-in-a-mouse-model-of-ischemia-reperfusion-injury/ 1/6

MEETING ABSTRACTS

# Sequestration of PLIN2 Regulates High-Fat Diet Induced Metabolic Syndrome and Nonalcoholic Fatty Liver Disease in a Mouse Model of Ischemia Reperfusion Injury

*K. Loh[1], X. Liu[1], L. Belyayev[1], C. Albanese[2], W. Cui[1], T. M. Fishbein[1], K. M. Khan[1], A. Kroemer[1]*

[1]Transplant, MedStar Georgetown Transplant Institute, Washington, DC, [2]Oncology, Georgetown University, Washington, DC

**Meeting:** 2019 American Transplant Congress

**Abstract number:** B29

**Keywords:** Donors, marginal, Liver transplantation, Mice, Warm ischemia

Session Information

**Date:** Sunday, June 2, 2019

**Session Name:** Poster Session B: Ischemia Reperfusion & Organ Rehabilition

**Session Time:** 6:00pm-7:00pm

└ **Presentation Time:** 6:00pm-7:00pm

**Location:** Hall C & D

6/28/2019 Sequestration of PLIN2 Regulates High-Fat-Diet-Induced Metabolic Syndrome and Nonalcoholic Fatty Liver Disease in a Mouse Model of Ischemia-Reperfusion Injury - ATC Abstracts

Related Abstracts

Enhancement of Endogenous omega-3 Protect against Ischemia-Reperfusion Renal Injury in Fat-1 Mice

TGR5 Regulates Innate Immune Responses in Mouse Liver Ischemia-Reperfusion Injury Through NRF2/HO-1 Signaling Pathway

***Purpose:** This study aimed to define characteristics and mechanisms leading to nonalcoholic fatty liver disease and metabolic syndrome in a fatty liver mouse model that mimics the state of marginal steatotic allografts in liver transplantation(LTx), and presents a growing challenge by limiting organ availability and increasing risk of liver graft failure from severe ischemia reperfusion injury(IRI).

***Methods:** A C57BL/6 mouse model for fatty liver disease was established. Control mice were fed a standard chow diet; fatty mice a lard-based high fat diet(HFD) for at least 16 weeks. Weights were monitored and intra-peritoneal glucose tolerance test(IPGTT) assessed the development of diabetes mellitus(DM). MRI quantified visceral fat and changes in fat composition. Mice were sacrificed at 29-34 weeks old and serum liver chemistries were measured. Livers were sectioned and processed for immunohistochemistry(IHC) and immunoblotting. A cohort of mice underwent partial warm IRI for 45 minutes and were sacrificed 24 hours later.

***Results:** HFD mice showed significant increases in body weight over time, averaging a weight of 42g versus 25g in control. Likewise, liver weights were drastically different- 2.7g in HFD versus 1.6g in control. This was further corroborated by IHC in which the HFD group consistently scored for steatotic changes in >66% of liver parenchyma and many cells with balloon degeneration. Based on IPGTT, HFD mice had a higher propensity of developing DM as their final blood glucose levels were markedly higher and abnormal. MRI confirmed that HFD mice accumulate more visceral and hepatic fat. There was no difference in serum liver transaminases between the two groups, however with IRI, transaminases in both groups were noted to trend upwards. AST was significantly higher in HFD with IRI mice versus HFD alone($p=0.027$). Next, we hypothesized that increased expression of perilipin 2(PLIN2) has a pivotal role in lipid accumulation in fatty IRI livers and dysbalance of glucose homeostasis. Immunoblotting of liver lysates showed a significant increase of PLIN2 in conjunction with a decrease of insulin receptor substrate 1(IRS1) and the inactive phosphorylated form of glycogen-synthase kinase 3β(GSK3β) in HFD mice, indicating that in HFD IRI increased

https://atcmeetingabstracts.com/abstract/sequestration-of-plin2-regulates-high-fat-diet-induced-metabolic-syndrome-and-nonalcoholic-fatty-liver-disease-in-a-mouse-model-of-ischemia-reperfusion-injury/ 2/5

sequestration of PLIN2 by lipid droplets results in severe diabetogenic changes through increased degradation of IRS1 and increased activity of GSK3β, both key players in glucose metabolism.

*Conclusions: Changes in IRS1 and GSK3β expression regulated by PLIN2 have crucial implications in HFD-induced metabolic syndrome and may further support a proinflammatory state in fatty liver disease that is enhanced by IRI. Translation of these findings to human LTx may allow for targeted intervention to better utilize marginal organs and prevent graft failure.

**To cite this abstract in AMA style:**

Loh K, Liu X, Belyayev L, Albanese C, Cui W, Fishbein TM, Khan KM, Kroemer A. Sequestration of PLIN2 Regulates High-Fat Diet Induced Metabolic Syndrome and Nonalcoholic Fatty Liver Disease in a Mouse Model of Ischemia Reperfusion Injury [abstract]. *Am J Transplant.* 2019; 19 (suppl 3). https://atcmeetingabstracts.com/abstract/sequestration-of-plin2-regulates-high-fat-diet-induced-metabolic-syndrome-and-nonalcoholic-fatty-liver-disease-in-a-mouse-model-of-ischemia-reperfusion-injury/. Accessed June 28, 2019.

« Back to 2019 American Transplant Congress

Most Viewed Abstracts

This Week This Month All Time

Search

Case 1:22-cv-00157   Document 1-1   Filed 01/24/22   Page 19 of 35

Home

Penis Transplantation: First U.S. Experience.

Evidence of a Clinically Significant Drug-Drug Interaction between Cannabidiol and Tacrolimus: A Case Report

Is There a Difference Between DCD and DBD Kidney Transplantation with Similar KDPI?

## Visit Our Partner Sites

### American Transplant Congress (ATC)
Visit the official site for the American Transplant Congress »

### American Journal of Transplantation
The official publication for the American Society of Transplantation (AST) and the American Society of Transplant Surgeons (ASTS) »

### American Society of Transplantation (AST)
An organization of more than 3000 professionals dedicated to advancing the field of transplantation. »

### American Society of Transplant Surgeons (ASTS)

Case 1:22-cv-00157   Document 1-1   Filed 01/24/22   Page 20 of 35

The society represents approximately 1,800 professionals dedicated to excellence in transplantation surgery. »

Copyright © 2013-2019 by **American Society of Transplantation** and the **American Society of Transplant Surgeons**. All rights reserved.

**Privacy Policy**

WILEY

This site uses cookies: Find out more.      Okay, thanks

# Sequestration of PLIN2 Regulates High-Fat Diet Induced Metabolic Syndrome and Nonalcoholic Fatty Liver Disease in a Mouse Model of Ischemia Reperfusion Injury

Katrina Loh MD, Xuxuan Liu PhD, Leonid Belyayev MD, Christopher Albanese PhD, Olga Rodriguez MD PhD, Wanxing Cui MD PhD, Thomas Fishbein MD, Khalid M. Khan MD, Alexander Kroemer MD PhD

## Abstract

[illegible]

## Background

- [illegible]
- [illegible]
- [illegible]
- [illegible]
- [illegible]
- [illegible]

## Methods

[illegible]

## Results

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

## Discussion

[illegible]

[illegible]

[illegible]

## References

[illegible]

## Disclosures

[illegible]

## Acknowledgements

[illegible]

Attachment 3 page 1

Attachment 4

MEETING ABSTRACTS

Home Meetings Archive Keyword Index Resources Advanced Search

Search this website Search

# Absence of Protective Innate Lymphoid Cell Type 3 (ILC3) and Persistence of Proinflammatory Innate Lymphoid Cell Subsets Immediately Post-Transplant Plays a Appreciable Role in Early Intestinal Barrier Dysfunction

*J. Kang, L. Belyayev, K. Loh, P. Cha, S. Moturi, K. Khan, J. Hawksworth, C. Matsumoto, M. Zasloff, T. Fishbein, A. Kroemer*

Georgetown University, Washington, DC

**Meeting:** 2019 American Transplant Congress

**Abstract number:** 482

**Keywords:** Epithelial cells, FACS analysis, Graft function, Lymphocytes

## Session Information

**Date: Tuesday, June 4, 2019**

**Session Name: Concurrent Session: Innate Immunity: Chemokines, Cytokines, Complement**

**Session Time:** 2:30pm-4:00pm

└ **Presentation Time:** 2:54pm-3:06pm

**Location:** Room 310

## Related Abstracts

ILC1 and ILC3 Are the Predominant Intra-Epithelial Lymphoid Populations in Human Small Bowel Grafts

Long-Term Persistence of Innate Lymphoid Cells in the Gut After Intestinal Transplantation

***Purpose:** Innate lymphoid cells (ILCs), the most recently described family of lymphoid cells, play fundamental roles in mucosal barrier immunity, tissue homeostasis, and immune regulation through the activation of host-derived cytokine expression; however their roles in intestinal transplantation (ITx) have yet to be defined.

***Methods:** Twenty-six participants who underwent IT x at our Transplant Institute were enrolled in this study. Intestinal biopsies were obtained immediately after ITx at day 0 and

Attachment 5

available on the shared drive accessible to everyone. Dr. Loh admitted to not being an expert on PLIN but stated was learning as she went. [Loh 10/4/19 Transcript, p. 61].

Dr. Loh presented the poster at the April 2019 CNMC's Research and Education Week and both the poster and abstract at the ATC's June 2019 meeting. She described Research and Education Week event as an internal, relatively informal CNMC event as a showcase of the fellows' work. Dr. Loh said she was encouraged to present at the CNMC event as practice for the ATC meeting. [Loh 10/4/19 Transcript, p. 50]. In addition, CNMC particularly encouraged her participation because part of her fellowship was different than that of the other fellows. She asked Dr. Kroemer's permission to submit the ATC materials to CNMC. [Loh 10/4/19 Transcript, p. 51].

Based on the interviews, it became clear to the Subcommittee that there was some tension between Dr. Liu and Dr. Loh that preceded the events that gave rise to the allegation of plagiarism. [Loh 10/4/19 Transcript, pp. 55-60; Liu 10/23/19 Transcript, pp. 19, 20, 22, 24, 46]. Of course, the circumstances do not go to whether or not plagiarism occurred, but they do provide helpful context for understanding the lab dynamics.

**5. Recommendation**

The Georgetown Faculty Handbook ("Code") defines "misconduct in research" as (1) fabrication, falsification, plagiarism, or other serious deviation from accepted practices in proposing, carrying out, and reviewing research, or in reporting results from research, or (2) failure to meet material legal or University requirements governing research."[2]

The U.S. Department of Health and Human Services' Office of Research Integrity's ("ORI") Policy on Plagiarism states that "ORI considers plagiarism to include both the theft or misappropriation of intellectual property and the substantial unattributed textual copying of another's work. **It does not include authorship or credit disputes.**" [emphasis supplied][3]

The Subcommittee has unanimously concluded that no violations within the purview of the Code have occurred. Dr. Liu's allegations do not meet the definition of research misconduct as stated in the Code. Dr. Liu's allegation relates to an authorship dispute, e.g., author order, and authorship disputes are not treated as research misconduct. Dr. Liu explicitly stated that if he had been listed as first author and consulted during preparation of the poster and abstract, he would not have objected to Dr. Loh's inclusion as an author on either document. [Liu 10/23/19 Transcript, p. 41]. Dr. Liu did not voice any disagreement with any of the findings that were presented in the abstract or poster; instead, he insisted throughout his interview that he should have been listed as first author on both documents.[4] The Inquiry Subcommittee concluded that Dr. Loh did sufficient work to justify inclusion as an author on the abstract and the poster.

[2] Georgetown University Faculty Handbook, available at https://facultyhandbook.georgetown.edu/toc/section4/d/.
[3] https://ori.hhs.gov/ori-policy-plagiarism

[4] Dr. Liu's testimony is somewhat contradictory in that he continuously claimed that he should have been listed as first author but also claimed that Dr. Loh included his name on the poster without his permission. However, there was other evidence that he was aware that the poster and abstract were being prepared and that the materials were available to the entire lab group. To

 Attachment 6

**Kroemer, Alexander**

**From:** Liu, Xunxian
**Sent:** Thursday, June 06, 2019 12:18 PM
**To:** Kroemer, Alexander H
**Subject:** Authorship

Alex,

I am very uncomfortable that Katrina shows my results without my consent. It is fine for her to apply for travel funds, putting her name as the first author but she needs my consent first. I have no idea what was her abstract and what data were presented.

For the paper related to PLIN2, I must be the first author, whether who is going to write the draft.

Thanks,

Xunxian

MedStar Georgetown Transplant Institute

[illegible]

June 27, 2019

Xuexian Liu

614 Rollins Avenue

[illegible]

Dear Xuexian,

This letter is to inform you that your probationary employment as Research Associate for the Center for Translational Transplant Medicine with Georgetown University is terminated effective June 27, 2019. This decision has been made pursuant to *Human Resources Policy #306, Probationary Employment Period.*

Your three-month probationary period ending July 8, 2019 was not successful due to reasons we have discussed previously, including Poor Work Performance and Unprofessional Conduct. Poor Work Performance concerns include the mislabeling of samples, missing mouse weights for 2 weeks, attributing NOD 2 evaluation results to the incorrect patient, performing experiments with incorrect reagents, and evidence of you sleeping at your desk during working hours. Unprofessional Conduct concerns include [illegible] an aggressive communication style with other lab members. Through verbal coaching, your performance has failed to improve and meet the department's expectations.

In accordance with *Human Resources Policy #805, Termination of Employment*, you are required to return all University property including but not limited to your University ID, keys, Go Card, computers, laptops, and any other equipment issued to you. You are also expected to satisfy any financial obligations you may have with the University. Your final paycheck will be deposited into your account unless otherwise indicated.

Georgetown University offers an automated employment verification service that allows you to have your employment and income verified within a matter of minutes. Information regarding "The Work Number® ", can be found at:

[illegible]

Sovera, the University's management company for compliance with the provisions of the Consolidated Omnibus Budget Reconciliation Act (COBRA), will be sending you information regarding your ability to temporarily continue your health care benefits. If you have immediate questions, however, regarding health care benefits, or regarding any other benefits, please contact the University's Office of Faculty and Staff Benefits, (202) 687-2500.

MedStar Georgetown Transplant Institute

Should you have any other questions, please contact Marlena Adams, HR Client Services Partner for GUMC at 202-687-2196.

Sincerely,

Anju Dasgupta

Laboratory Manager, Center for Translational Transplant Medicine

Cc: HR

file

Attachment 8

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES
OFFICE OF UNEMPLOYMENT COMPENSATION
BENEFITS UNIT
4058 MINNESOTA AVENUE, N.E.
WASHINGTON, D.C. 20019

## DETERMINATION BY CLAIMS EXAMINER

**CLAIMANT:**

XUNXIAN LIU
614 ROLLINS AVE
ROCKVILLE, MD - 20852

**EMPLOYER:**

GEORGETOWN UNIVERSITY
OFFICE OF FACULTY & STAFF BENEFITS
WASHINGTON, DC - 20007

SOCIAL SECURITY NUMBER: XXX-XX-4127

ISSUE: Discharged for Gross Misconduct

### LAW

The District of Columbia Unemployment Compensation Act provides that an individual shall be disqualified from receiving benefits if it is found that he/she was discharged from his/her most recent employer for misconduct occuring in the course of the work. D.C. Code, Title 51-110(b)(1). D.C. Municipal Regulation, Chapter 7-312.3(e) provides gross misconduct means an act which deliberately or willfully violates the employer's rules; deliberately or willfully threatens or violates the employer's interest; shows a repeated disregard for the employee's obligation to the employer; or disregards standards of behavior which an employer has the right to expect of its employee

### FACTS

The claimant he was discharged because he did not meet the expectations. The claimant denied this information, stated that he was discharged after he filed a complaint against a doctor. The employer was contacted and instructed to provide proof of misconduct.

### REASONING

The employer has the responsibility to provide evidence of misconduct. In this case, the employer did not provide evidence to show the claimant engaged in misconduct. Therefore, the employer has not met the burden of proof and the claimant is qualified to receive unemployment insurance benefits.

### DECISION

The claimant is hereby qualified to receive unemployment insurance benefits effective 06/23/2019.

I certify that a copy of this document was mailed to the above named claimant and employer addresses on 07/11/2019.

87697

Claims Examiner

"Pursuant to DC Code §51-111(k)(2), all correspondence, notice, determinations, or decisions issued by the Director may be signed by an electronic signature that complies with the requirements §28-4917 and Mayor's Order 2009-118, issued June 25, 2009. The unique number in the signature line is the claims examiner's electronic signature. It is the attestation of and to all statements in this determination."

SEE THE ENCLOSED D.C. CODE & NOTICE OF APPEAL RIGHTS



**xunxian liu** <xunxianl@yahoo.com>
To: Alexander H. Kroemer, Michael Smith, Mary Schmiedel
Tue, Nov 24, 2020 at 2:[illegible] PM

Dear All,

The judge of the superior court dismiss my claims of Dr. Kroemer and Dr. Loh's trespassing my data, stating that the doctors do not prohibit me to use the data, leading to tort consequence against me. I agree with that.

Now, for the plin2 publication, I request to use my collected data, which is not included in the previously sent ones; specifically, my generated western blots for ferroptosis study. Also, I need further characterize the tissues to make the data meaningful in the paper.

We must provide more data from different angles to publish something significant.

Please send me the data and contact me for the rest characterization by next Tuesday, a week later. If there is no response, I will call Dr. Kroemer. Please corporate me to give an opportunity to science. To express my sincerity, I will withdraw the case from OHR after Dr. Kroemer agrees with letting me complete the rest experiments; moreover, I do not need anyone to pay me for performing the experiments.

Happy Thanksgiving Day!

Sincerely,

Xunxian Liu



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Xunxian Liu

Plaintiff

vs.

Case Number **2021 CA 004775 B**

Georgetown University

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Xunxian Liu
Name of Plaintiff's Attorney

614 Rollins Ave
Address
Rockville, MD 20852

301-633-6681
Telephone

*Clerk of the Court*

By ____________________
Deputy Clerk

Date 12/27/2021

如需翻译,请打电话 (202) 879-4828　Veuillez appeler au (202) 879-4828 pour une traduction　Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요　የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_______________________________________________
Demandante

contra

Número de Caso: ______________________

_______________________________________________
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_______________________________________________
Nombre del abogado del Demandante

_______________________________________________
Dirección

Por: _______________________________________________
Subsecretario

_______________________________________________

_______________________________________________
Teléfono

Fecha _______________________________________________

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

[illegible] (202) 879-4828 [illegible]    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

XUNXIAN LIU
Vs. C.A. No. 2021 CA 004775 B
GEORGETOWN UNIVERSITY

# INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:**

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge HIRAM E PUIG-LUGO
Date: December 21, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, April 01, 2022
Location: Courtroom 318
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

**ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES**

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides, "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1: (AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise. If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

**Option 2: (LAPTOP/ DESKTOP USERS 1):**

Open Web Browser in Google Chrome and copy and paste following address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3: (LAPTOP/ DESKTOP USERS 2):**

Open Web Browser in Google Chrome and copy and paste following address https://dccourts.webex.com Select **Join**, enter the Meeting ID from the next page

AUDIO ALTERNATIVE: Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window. Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.

**Option 4: (Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option** #2

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | WebEx Direct URL | WebEx Meeting ID |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

| | | | | |
|---|---|---|---|---|
| | 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
| | 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| | 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| | 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| | 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| | 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| | JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| | A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| | B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| | B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| | B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| | B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |