Case1:22-cv-00157-RDM Document 11 Filed 2/15/2022 Page **1** of 9

UNITED STATES DISTRICT AND BANKRUPTCY COURTS

FOR THE DISTRICT OF COLUMBIA

Xunxian Liu, Plaintiff

V                                                                       Case#: 1:22-00157-RDM
                                                                        Judge: Randolph D. Moss

Georgetown University, Defendant

……………………………………………………………………………………..

614 Rollins Ave.
Rockville, MD 20852                    2/15/2022

Honorable Judge Randolph D. Moss
US District Court for the District of Columbia
333 Constitution Ave. NW
Washington, DC 20001

**Motion for summary judgments favoring to Plaintiff**

Dear Judge Moss,

A. Although I request a Jury trial to hear this case in my revised pleadings, now in order to save federal government's resources, I petition the Court to resolve the case with summary judgments of the three incidents which are undisputed discrimination, based on facts and pursuant to federal laws and DC laws.

   *Incident 1: GU/Dr. Alexander Kroemer let Dr. Katrina Loh but not me to present the PLIN2 data without letting me know before the meeting*

B. Evidence (file 7, attachment 2) shows that Dr. Kroemer put Loh as the first author and me as the second author in the poster that was presented by Loh in the conference held in Boston during 6/1-5/2019 without letting me know before the meeting.

C. I create a table in which GU/Dr. Kroemer's discrimination is able to be clearly seen in selection of the first author in the presentation (3 of the table). The table is as follows:

1

Table 1: Comparison of author sequences in samples of Kroemer as the senior author

| Publications or presentations | 1 (attachment 1) 2012 | 2 (attachment 2) 2016, similar topic to that of 1 | 3 (file 7, attachment 2) 2019 | 4 (file 7, attachment 4) 2019 |
|---|---|---|---|---|
| Correspondent author, prima facie: Caucasian, White, Germany, Male, middle 40 | Dr. Kroemer in Germany | Dr. Kroemer in Germany | Dr. Kroemer in the US | Dr. Kroemer in the US |
| Author numbers | 9 | 11 | 9 | 11 |
| The first author Meaningful prima facie | Rovira Jordi Caucasian White Spain | Rovira Jordi Caucasian White Spain | Katrina Loh Asian, Asian Malaysia, Female not to 40 | Jiman Kang Asian, Asian Korea, Male, not to 40 |
| The second author (only me) My prima facie | | | Xunxian Liu Asian, Asian China, Male, 64 | |
| Environment for learning English | Excellent | Excellent | Malaysia is better than China | Korea is better than China |
| Age coming to the US | Not Applicable | Not Applicable | Loh may be at 3 Liu is at 36 | Kang may be at 20s |
| Contributions to the study | Those can be seen in attachment 1, black body | May be similar to those of attachment 1, black body | Loh gathered data from other scientists, did calculations of Fig. 5, right panels and Fig.6 (attachment 3) and Dr. Kroemer asked her to write the abstract<br>Liu had contributions to all the figures as he raised the mice and collected the mice tissues and sera; especially, Liu designed/performed key experiments for Fig. 8, molecular biology mechanisms that are elucidated by Liu (attachment 3), Liu also wrote the abstract as Loh requested (file 9, attachment 1) but she did not tell the goal to Liu | Played major roles in the study |
| Author sequences | Normal | Normal | Abnormal | Normal |
| Dr. Kroemer selected the first author based on one's spoken English level, but not one's contributions to study 3 of the table. So he perpetrated discrimination in race, color, national origin, sex and age ||||||

D. Albeit selection of the first author (Loh not me) in the presentation was not employment practices, the first author (Loh) directly presented data including mine in the international meeting, which is other training, defined by 42 U.S.C. § 2000e-2(d) as unlawful employment practices, because table 1 demonstrates Dr. Kroemer chose the first author based on one's spoken English level, not one's contributions to the research. Table 1 proves Dr. Kroemer's discrimination according to 42 U.S.C. § 2000e-2(k) A(i). Although Dr. Kroemer chose the first author as if he performed unintentional discrimination, he and Loh did not let me know the presentation or did not send me the final version of the abstract, which is proof of intentional discrimination, because he deprived my right to propose different opinion about author sequence. Had he showed me the final version of the abstract before the meeting, I would have been said that Loh could not be the first author, as no one is willing to be exploited by anyone else. Dr. Kroemer thinks he is able to control my-produced data and my-caused study because he pays me, which is incorrect; at least, he should have let me know before the presentation. Dr. Kroemer did not render such a chance to me, just not letting me know the presentation: depriving my right to know since he got bad experience from Dr. Kang: switching author sequence would make Dr. Kang uncomfortable (file 8, sentence 11, lines 12-15).

F. Furthermore, Dr. Kroemer never let me know the arrangements: letting Loh present PLIN2 data and be the first author, nor showing me the final version of the abstract before the meeting, violating my three rights/privileges of the employment: my right/privilege to know that my data to be presented by Loh; my right/privilege to present my-generated data; my right/privilege to be the first author in my-caused research.

Since the aforementioned rights are minority's ones, the US Supreme Court may not define those, but those rights still are qualified for my privileges of the employment, which is protected by ADEA of 1967. However, Dr. Kroemer let Loh present my-unpublished data with my name in the listed authors in an international meeting without my consent, damaging my right to privacy, as unpublished data produced by me are still more or less related to my personal matters, which is one of unenumerated rights falling into protections of Amendment Nine of the US Constitution, and is recognized by the US Supreme Court. An obvious damage of my right to privacy is to publish an incomplete study with my name as molecular biology elucidations in the presentation are so few except figure 8 (file 7, Attachments 2 and 3), which is why I proposed to study the project further to make the research meaningful (file 7, attachment 9). The incomplete presentation will induce **premature** criticism. As I am the only one among the authors with PLIN2 experience, this criticism goes to me and I may endure unexpected/surprising collateral damages.  Right to privacy belongs to liberty. Kroemer did not let me know the presentation before the meeting, depriving my liberty: I do not want my name to appear in an abstract without my consent, and depriving my intellectual property without due process (letting me know is the due process), so infringing my Constitutional right, secured by Amendments of Five and Fourteen of the US Constitution. Although Dr. Loh asked my help to write an abstract of the PLIN2 research, she never told me what goal to write the abstract, making me think the abstract for a formal publication, so that I had been waiting for them to discuss authorship sequence with me, as I left authorship in blank (File 9, Attachment 1). It is turn out to be that Loh presented the data including my-produced ones in the meeting in

June of 2019 before 6/6/2019, without sending me the final version of the abstract before the meeting, which has me upset, so that I sent a complaint email 6/6/2019 (file 7, attachment 6) to Dr. Kroemer. The conclusion is that GU/Kroemer letting Loh present my-unpublished data without letting me know before the meeting violates my right to privacy and due process right for protection of my liberty and intellectual property, protected by Amendments Nine, Five, Fourteen of the US Constitution.

F. I agree that a simple training is not compensable. A simple training is defined as one just joining a meeting, not presenting anything in the meeting, whereas Loh presenting my-caused study and my-generated data in the conference is not simple training, but at least other training (42 U.S.C. § 2000e-2(d)).

G. GU/Kroemer offering Loh to draft/submit the abstract and allowing Loh to present the poster (file 7, attachment 2) without letting me know violate my equal opportunity to participate fully in intellectual life in DC ((DC code: § 2-1402.01).

H. Remedy for incident 1: GU/Kroemer perpetrated intentional discrimination in national origin/sex and age by selecting Loh to be the first author in the presentation without letting me know, which deprives my other training opportunity (42 U.S.C. § 2000e-2(d)), making malice and/or reckless indifference to my federally protected rights: right to privacy, due process right for protection of my liberty and intellectual property, secured by Amendments of Nine, Five and Fourteen of the US Constitution, privileges of the employment: right to know my-caused study and my-generated data to be presented by Loh before the meeting, right to present my-produced data; right to be the first author in my-caused study, protected by ADEA of 1967, and the number of GU employees is over 500, so that punitive compensation is $300000, pursuant to 42 U.S.C. § 1981a (b)

(1) and (3)(D). GU/Kroemer also violated ((DC code: § 2-1402.01), abolishing my equal opportunity to participate fully in intellectual life in DC, there is no defined compensation, so it is moot.

*Incident 2: GU revenged my complaint by termination of my position (14741 of OHR)*

H. GU terminated my employment on 6/27/2019 due to my complaint email to Kroemer on 6/6/2019 (file 7, attachment 6). This retaliation fits D.C. Code § 32–1311. Retaliation (b) as the following: (b) An employee (I, Xunxian Liu) complaint or other communication (6/6/2019 email to Kroemer, file 7, attachment 6) need not make explicit reference to any section or provision of this chapter or the Living Wage Act to trigger the protections of this section. The employer, or any person (Kroemer's group) acting on behalf of the employer (GU), taking adverse action (6/27/2019, termination letter, file7, attachment 7) against an employee (me, Xunxian Liu) within 90 days of an employee (me, Xunxian Liu) or other person's engagement in the activities (6/6/2019 email) set forth in subsection (a) of this section shall raise a presumption that such action is retaliation, which may be rebutted by clear and convincing evidence (listed poor performance of mine in the termination letter is denied, file 7, attachment 8) that such action was taken for other permissible reasons.

I insert brackets with relevant information of the incident by different fond into the law, and the law governs incident 2.

I. Since Office of Human Rights in DC is a federal institution, having no jurisdiction in DC laws, OHR dismisses the case and recommends me to file the lawsuit in the DC Superior Court which has the jurisdiction under this law. I did, and then Defendant

removed the case to the Federal Court. Fortunately, this Court accepts supplemental authority.

J. Defendant has no chance for termination of my employment by other permissible reasons as they never respond, by so far, to my email (file 7, attachment 9) to request to use the ferroptosis data sent to Dr. Kroemer via my GU email on 6/24/2019, three days before issuing the termination letter to me. My-designed/produced data presented in the Attachments 2 and 3 of file 7 and my-generated ferroptosis data have quality; otherwise, Dr. Kroemer would not have presented them in the meeting (file 7, attachment 2) or would have mentioned in the termination letter (file 7, attachment 7) as evidence of my poor performance. Thus, my performance is good in Kroemer's lab, which is supported by these my-engendered data, contradicting to the firing reason: my poor performance in the lab as the letter (file 7, attachment 7) says. The listed evidence of my poor performance is so little and trivial, picking up from my-performed thousands of experiments in the lab and napping is unrelated to my job that is not any on call job in the lab. The napping did not hold up any planned jobs but likely working better. Even if napping once had not been allowed, GU should have fired me a month ago. The pathetic evidence of my poor performance of course is denied by DC Unemployment Office (file 7, attachment 8), so that the reason discharging me is disqualified for the other reason but retaliation. Therefore, the reprisal of my 6/6/2019 complaint email is to suppress my right to complain, secured by Amendment One of the US Constitution; the termination of my job is also discrimination in national origin and age, violating 42 U.S.C. § 2000e-2(a) (1) and ADEA of 1967, because Dr. Kang complained as I did: uncomfortable for Loh to be the first author in the study (file 8, sentence 11, lines 12-15)

which he played major roles in. He (Korea, not to 40) is still hired, whereas I (China, 64) have been fired: national origin discrimination is proved (42 U.S.C. § 2000e-2 (k) A(i)); Moreover, reprisal is always intentional, so the discrimination is intentional.

K. Remedy for incident 2: Because GU intentionally discharged me (file 7, attachment 7) by retaliation, leading to intentional national origin discrimination that infringes 42 U.S.C. § 2000e-2(a) (1), Pursuant to 42 U.S.C. § 2000e-5 (g) (1), the Court may enjoin Defendant to award me $100000 for two-year back pay (my salary in Kroemer's lab is $50000/year), but I do not want a paid-job in GU as GU will deprive all my rights in my-produced data as GU did in incidents 1 and 3 (please see below). Moreover, GU perpetrated intentional national origin discrimination in discharging me, doing malice and/or reckless indifference to my federally protected rights: right for complaint, protected by Amendment One of the US Constitution and age-related protection from discharge (ADEA of 1967) as uncomfortable complaint for switching authors (sentence J, lines 20-23) is the firing reason, I should not have been fired first, and the number of GU employees is over 500, so that punitive compensation is $300000, pursuant to 42 U.S.C. § 1981a (b) (1) and (3)(D). GU also violated D.C. Code § 32–1311, retaliation, pursuant to 2015 D.C. Code § 32–1311 (c)(1), the award is between $1000-$10000; there are also back/front pays; however, if I am awarded by 42 U.S.C. § 2000-e5 (g)(1), overlapped back pays will be given up. No front pay is awarded as there will be no paid position for me.

*Incident 3: GU revenges my complaint by not responding to my email (14771 of OHR)*

L. Defendant does not explain why the three GU's employees do not respond to my 11/24/2020 email (file 7, attachment 9), which is retaliation, fitting the federal law: 42 U.S.C. § 2000e-3(a), because I assisted the OHR investigation (14741 of OHR); in

addition, I requested to collect more data for making existing data meaningful (file 7. attachment 9). Collecting experimental data in a lab for making existing data meaningful, which leads to publication of the data, is always training for a biomedical researcher, and the training is at least other training (42 U.S.C. § 2000e-3(a)).

M. Remedy for incident 3: since retaliation is always intentional and GU depriving my other training opportunity by making malice and/or reckless indifference to my federally protected rights, right to file complaint, protected by Amendment One of the US Constitution and right to use my-generated data sent to Dr. Kroemer via my GU email 6/24/2019, which is one of privileges of the employment, protected by ADEA of 1967, as the data were generated during my employment in GU, and the number of GU employees is over 500, so that punitive compensation is $300000, pursuant to 42 U.S.C. § 1981a (b) (1) and (3)(D). GU again abolishes my equal opportunity to join intellectual life fully (D.C. Code: § 2-1402.01), and the compensation may be moot.

N. I summarize the remedy in table 2 as follows:

Table 2: Remedy

| Incident 1 | Relief by federal laws: $300000; by DC laws: moot |
|---|---|
| Incident 2 | Relief by federal laws: $400000; by DC laws: $1000-$10000 |
| Incident 3 | Relief by federal laws: $300000; by DC laws: moot |
| Total relief | By federal laws:$1000000; by DC laws: $1000-$10000 |

Respectfully, Xunxian Liu (electronic signature), *Pro se*, Plaintiff

In accordance with Local Civil Rule 7(m), I sent Defendant's Counsel, Henry A. Platt, the motion in PDF version on 2/14/2022 for GU's opinion of the facts. The Counsel had no reply during the whole day. So Defendant opposes the motion.  Xunxian Liu

I also certify that once file 11 is in the docket, Defendant's Attorney will see the document through his email, sent by the Court or the Counsel has a valid pacer account. Xunxian Liu